LINDA A. KULIKOWSKI, Plaintiff-Appellee, v. BERNARD A. LARSON, Defendant (Charles A. Jenkins, Indiv. and d/b/a Jen Char Lounge, *et al.*, Defendants-Appellants).

Third District    No. 3—98—0637

Opinion filed May 17, 1999.

Frank T. Davenport (argued), of Berger, Newmark & Fenchel, P.C., of Chicago, for appellants.

James Duda (argued), of Cummings & Duda, Ltd., of Homewood, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Defendants, Charles A. Jenkins (Jenkins) and First Midwest Bank of Illinois (First Midwest), appeal from the trial court's denial of their petition to vacate judgment pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1996)). On appeal, defendants contend that equitable considerations of substantial justice and fairness required the trial court to relax or excuse the diligence requirement of section 2—1401 and grant their petition to vacate. For the reasons that follow, we affirm in part and vacate in part.

On September 21, 1994, plaintiff, Linda A. Kulikowski, filed a complaint against Bernard A. Larson, Jenkins, and First Midwest. In her complaint, plaintiff alleged that, on the evening of October 30, 1993, she had dinner with Larson. After dinner, plaintiff accompanied Larson to the Jen Char Lounge, a local tavern. Over the next several hours, Larson consumed a large amount of alcohol and became intoxicated. Plaintiff and Larson left the tavern and walked to Larson's automobile. Larson had parked the vehicle facing a wall. Larson started the vehicle's engine. Plaintiff then crossed in front of the vehicle on her way to the passenger side door. While she was crossing, the car lurched forward, pinned plaintiff against the wall, and crushed her right leg.

In count I of her complaint, plaintiff alleged that her injuries were a proximate result of Larson's negligence. In count II of her complaint, plaintiff alleged that Jenkins and First Midwest were liable to her under the provisions of the Dramshop Act (235 ILCS 5/6—21 (West 1992)) because they had caused Larson's intoxication. Plaintiff asked the court to enter a judgment finding Jenkins liable for $30,000

as compensation for her personal injury and $40,000 for her loss of means of support. Plaintiff asked that First Midwest be held liable in the same amounts for the same injuries.

Larson settled with plaintiff. Jenkins and First Midwest failed to answer the complaint. On December 12, 1995, plaintiff moved for, and was granted, a default judgment. On March 28, 1996, without notice to defendants, a hearing was held to prove up the damages of the default judgment. That same day, the trial court entered an order finding Jenkins liable to plaintiff for $70,000 in damages and First Midwest liable in the same amount. Plaintiff notified defendants of this judgment in a letter dated January 20, 1997.

On March 30, 1998, Jenkins and First Midwest filed a petition to vacate the judgment. In their petition, defendants contended that: (1) neither of them is a party that can be held liable under the Dramshop Act; (2) plaintiff's complicity in Larson's intoxication would bar any recovery; (3) the Dramshop Act does not permit plaintiff to claim her own lost wages as loss of means of support; and (4) principles of substantial justice and equity require that any lack of diligence be excused because the default judgment is unfair, unjust, and unconscionable. On this last point, defendants argued that the default judgment is unconscionable because: (1) the judgment itself is unjust; and (2) plaintiff's delay in providing defendants with notice of the entry of the judgment casts "a cloud on the proceedings."

Attached to the petition were several supporting documents. Among these documents was a land trust agreement for the premises of the Jen Char Lounge. Under the agreement, First Midwest was the land trustee and Jenkins was the sole beneficiary of the trust. Only Jenkins had the right to manage and control the premises. Also attached to the petition were state and county licenses authorizing Jen-Char, Inc., to sell alcoholic beverages on the premises of the Jen Char Lounge.

The trial court entered a written order denying defendants' petition. In its order, the court found that defendants "may have meritorious defenses to [p]laintiff's complaint and the amount of [damages]." However, the court ruled that defendants had failed to exercise the diligence necessary to maintain a section 2—1401 petition.

On appeal, defendants contend that equitable considerations of substantial justice and fairness required the trial court to relax or excuse the diligence requirement of section 2—1401 and grant their petition to vacate.

■ Section 2—1401 of the Code of Civil Procedure provides a mechanism to vacate a final judgment after 30 days, but no later than 2 years, from its entry. 735 ILCS 5/2—1401(a), (c) (West 1996). In order

to obtain relief under this section, the petitioner must show the following by a preponderance of the evidence: (1) the existence of a meritorious claim or defense; (2) due diligence in defending the original action in the trial court; and (3) due diligence in pursuing the section 2—1401 petition. *Smith v. Airoom, Inc.* 114 Ill. 2d 209, 499 N.E.2d 1381 (1986). However, the trial court may relax or excuse the exercise of diligence when necessary to provide relief from an unfair, unjust, or unconscionable judgment. *Community 1st Credit Union v. Boswell*, 302 Ill. App. 3d 739, 706 N.E.2d 520 (1999). A reviewing court will not disturb a trial court's decision to deny a section 2—1401 petition absent an abuse of discretion. *Community 1st Credit Union*, 302 Ill. App. 3d 739, 706 N.E.2d 520.

## JUDGMENT AGAINST FIRST MIDWEST

First Midwest contends that it is not a party subject to liability under the Dramshop Act (the Act) (235 ILCS 5/6—21 (West 1992)). Specifically, First Midwest maintains that, as the land trustee for the premises of the Jen Char Lounge, it held nothing more than the naked legal title to the premises and could not be held liable as an "owner" under the Act.

In addition to sellers of alcoholic beverages, the Act imposes liability on any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcohol will be sold there. 235 ILCS 5/6—21(a) (West 1992). However, such liability will not attach unless the person holding an ownership interest in the premises has a meaningful degree of control over the premises or involvement in the selling of alcohol there. *Wendt v. Myers*, 59 Ill. 2d 246, 319 N.E.2d 777 (1974). A land trustee who holds nothing more than the naked legal title to premises where alcohol is sold is not subject to liability under the Act. *Robinson v. Walker*, 63 Ill. App. 2d 204, 211 N.E.2d 488 (1965).

Here, it is clear from the terms of the land trust agreement that First Midwest held nothing more than the naked legal title to the premises of the Jen Char Lounge. Under the agreement, only Jenkins, the beneficiary of the trust, had any right to manage and control the property. Once First Midwest brought this fact to the attention of the trial court, equity required that First Midwest's lack of diligence be excused to provide it relief from an unconscionable default judgment. Therefore, we vacate that portion of the default judgment holding First Midwest liable to plaintiff in the amount of $70,000.

## JUDGMENT AGAINST JENKINS

### *Loss of Means of Support*

Jenkins contends that the Act does not permit a plaintiff who has

suffered personal injury to recover her own lost wages as an award for loss of means of support.

■ The Act provides for three types of compensable damage: personal injury; property damage; and loss of means of support. 235 ILCS 5/6—21(a) (West 1992). The Act limits liability for personal injury or property damage to $30,000 for each person injured and liability for loss of means of support to $40,000. 235 ILCS 5/6—21(a) (West 1992). Courts have long recognized recovery for lost wages as a component of the personal injury type of compensable damage under the Act. See *Shiflett v. Madison*, 105 Ill. App. 2d 382, 245 N.E.2d 567 (1969). Moreover, courts have repeatedly rejected jury instructions that would permit a jury to award lost wages as part of a plaintiff's recovery for personal injury and as part of the recovery of a person supported by the plaintiff for loss of means of support. See *Galyean v. Duncan*, 125 Ill. App. 3d 464, 466 N.E.2d 264 (1984); *Halka v. Zupan*, 68 Ill. App. 3d 616, 386 N.E.2d 439 (1979); *Shiflett*, 105 Ill. App. 2d 382, 245 N.E.2d 567.

The legislature has chosen to set limits on the amount recoverable under the Act. We must assume that it was aware of, and acquiesced in, the judicial decisions recognizing lost wages as a component of personal injury when it enacted the limits. See *Charles v. Seigfried*, 165 Ill. 2d 482, 651 N.E.2d 154 (1995) (it is assumed that a legislature is aware of, and has acquiesced in, prior judicial construction of a statute when it amends the statute without altering that construction). To allow a party to circumvent these limits by labeling lost wages as loss of means of support would frustrate the legislative purpose in setting these limits. Therefore, we hold that a plaintiff may not recover her own lost wages under the Act's provisions for loss of means of support. Accordingly, we find unconscionable and vacate that part of the default judgment holding Jenkins liable to plaintiff for loss of means of support in the amount of $40,000.

## Personal Injury

■ Jenkins also contends that the trial court should have excused his lack of diligence and vacated the $30,000 personal injury award entered against him because the award is unfair, unjust, and unconscionable. However, because we conclude that Jenkins failed to establish a meritorious defense to this portion of the default judgment, we need not address the propriety of the trial court's decision not to relax or excuse diligence.

In the petition to vacate, Jenkins offers two defenses applicable to plaintiff's claim for personal injury damages. In his first defense, Jenkins maintains that he is an improper defendant under the Act because

he is not a liquor licensee. In his second defense, Jenkins asserts that the record contains sufficient facts to raise the affirmative defense of complicity.

We note that the trial court specifically found in its written order that defendants "may have meritorious defenses." However, the trial court never addressed any particular defense. Moreover, as a court of review, we may affirm the trial court's judgment, or any part of it, regardless of the trial court's reasoning on any basis warranted by the record (*Becker v. Zellner*, 292 Ill. App. 3d 116, 684 N.E.2d 1378 (1997)).

Jenkins asserts that he cannot be held liable under the Act because he is not licensed to sell liquor on the premises of the Jen Char Lounge. Rather, a corporation, Jen-Char, Inc., is the holder of that liquor license. As noted previously, however, in addition to sellers of liquor, the Act imposes liability on any person owning, renting, leasing or permitting the occupation of any building or premises with knowledge that alcohol will be sold there (235 ILCS 5/6—21(a) (West 1992)). Therefore, under the Act, the fact that one is not the holder of the liquor license for the premises is not a defense. Moreover, under the land trust agreement, Jenkins, not Jen-Char, Inc., is the sole beneficiary of the land trust with the right to manage and control the premises of the Jen Char Lounge. As such, Jenkins is an "owner" subject to liability under the Act. See *Wendt*, 59 Ill. 2d 246, 319 N.E.2d 777.

Jenkins also contends that, when their veracity is assumed, the allegations of plaintiff's complaint are sufficient to show that complicity would be a defense available to defeat plaintiff's claim if the cause were to proceed to a trial on the merits.

One who is complicit in the intoxication of the inebriate is precluded from recovery under the Act. *Nelson v. Araiza*, 69 Ill. 2d 534, 372 N.E.2d 637 (1978). A person is complicit in the intoxication of the inebriate if the person actively contributes to or procures the inebriate's intoxication. *Nelson*, 69 Ill. 2d 534, 372 N.E.2d 637.

Under section 2—1401, a petitioner need not show that a defense will ultimately prevail at trial in order to establish the existence of a meritorious defense. *Pirman v. A&M Cartage, Inc.*, 285 Ill. App. 3d 993, 674 N.E.2d 874 (1996). However, a petitioner must assert sufficient facts which, if believed by the trier of fact, would defeat the plaintiff's claim. *Pirman*, 285 Ill. App. 3d 993, 674 N.E.2d 874.

In the petition to vacate, Jenkins reiterates the allegations of plaintiff's complaint in an attempt to show that he could raise the defense of complicity. In her complaint, plaintiff alleges she accompanied Larson to a tavern where Larson became intoxicated over several hours. Plaintiff further alleges that Larson and she walked to

Larson's car in order to drive home. These facts show plaintiff was a social companion of Larson on this particular occasion. They do not show that plaintiff actively contributed to or procured Larson's intoxication. Thus, defendants have failed to state facts sufficient to raise complicity as an affirmative defense.

Accordingly, we conclude that Jenkins failed to establish a meritorious defense to that part of the default judgment finding him liable to plaintiff in the amount of $30,000 for her personal injury. Therefore, we hold that the trial court did not abuse its discretion by denying relief from this part of the default judgment.

As a final matter, we note that plaintiff waited almost 10 months before notifying defendants that a default judgment had been entered.

■ No statute or rule of procedure requires a plaintiff to notify a defendant that a default judgment has been entered. *Kaput v. Hoey*, 124 Ill. 2d 370, 530 N.E.2d 230 (1988). Moreover, delay in providing such notice will not by itself justify relaxing or excusing due diligence. *Bonanza International, Inc. v. Mar-Fil, Inc.*, 128 Ill. App. 3d 714, 471 N.E.2d 221 (1984). However, when a plaintiff does not provide notice until more than 30 days after a default judgment has been entered, the delay may be one factor considered by a court in determining whether equity will permit the default judgment to stand. *Pirman*, 285 Ill. App. 3d 993, 674 N.E.2d 874.

Although not central to our disposition of this case, plaintiff's delayed notice to defendants is another circumstance contributing to our conclusion that the judgment against First Midwest and the $40,000 award for loss of means of support against Jenkins must be vacated. Of course, the delayed notice is irrelevant to our affirmance of the $30,000 personal injury award against Jenkins because neither diligence, nor the relaxation or excuse of diligence, is a relevant consideration to that part of the judgment in light of Jenkins' failure to state a meritorious defense.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County denying relief from that portion of the default judgment finding defendant Charles A. Jenkins liable to plaintiff in the amount of $30,000. However, we vacate the remainder of the default judgment.

Affirmed in part; vacated in part.

BRESLIN and KOEHLER, JJ., concur.